## Commonwealth v. Schrock

*Glass & Glass* and *Wilbert H. Beachy, Jr.*, for appellant.

*Frank A. Orban, Jr.*, district attorney, for Commonwealth.

*Charles H. Coffroth* and *James O. Courtney*, for Berlin-Brothersvalley School District.

LANSBERRY, P. J., February 21, 1951.—Defendant, Elmer Schrock, was found guilty and sentenced for a violation of the compulsory attendance section of the Public School Code by Justice of the Peace Eugene W. Pugh. Upon defendant's petition an appeal was allowed and perfected and the matter heard de novo.

There is no controversy as to the facts in the case which may be narrated as follows: Elmer Schrock is the father of four daughters, Alice, aged 7; Ruby, aged 9; Hazel, aged 10, and Gladys, aged 11, who, with their parents and an infant child, reside in Brothersvalley Township, Somerset County, about two and one-half miles from Berlin Borough where the grade school and high school of the joint Berlin-Brothersvalley School District are maintained and conducted and to which schools, respectively, all four of the children were properly assigned for the school year 1950-1951; all four of these children attended schools in the joint district during the school term 1949-1950 and were by the district transported by school bus during that school year; on April 13, 1950, the board of school directors adopted a resolution, inter alia, designating Monday, August 28, 1950, as the first day of the 1950-1951 school term and notice thereof was given, although neither the resolution nor the notice fixed the hour for the commencement of the school sessions; on August 10, 1950, the joint board of school directors adopted the following resolution: "that we start school at the beginning of the school term at 8:00 A. M. Standard Time (which is 9:00 A. M. Daylight Savings Time)— closing at 2:40 P. M. Standard Time (which is 3:40 P. M. Daylight Savings Time). This time schedule to continue as long as Daylight Savings Time continues in the community;" a news item to this effect appeared in one or more of the newspapers of general circulation in the geographical area of the school district but specific notice was not sent to the several residents of the dis-

trict; on August 26th defendant, in conversation with one of the school directors, learned the school would operate on "fast time"; on the morning of August 28th defendant, Elmer Schrock, was at the home of his next neighbor at 7:20 (E. S. T.) when the school bus arrived for the neighbor's children, that neighbor's home being the bus route stop immediately previous to defendant's; at that neighbor's stop and in the presence of the school bus driver defendant told his neighbor, "mine are not going to school until they come on standard time," and when told that all the children thus far were on the bus, defendant told the bus driver "you won't have them all, you won't have mine so there is no use to stop for them;" all of the children of the district except those of defendant attended school regularly beginning with the opening day and at the hours fixed by the resolution of August 10th; the school bus stopped each morning thereafter at 7:27 (E. S. T.) at the Schrock home, which is located on the public road traversed by the bus route; at the specific direction of defendant, none of his children attended school on August 28th, 29th, 30th, 31st, September 1st, 5th, 6th, 7th or 8th, being days in which school was in session; on September 5th each of the four teachers having the several Schrock children in their report rooms made written report of the several absences of these children and handed the same to the principal in charge; these report notices were delivered to the enforcement officer, who, on the same day, September 5th, called at the Schrock home and read to defendant the contents of the one report-notice and informed defendant of the contents of the other three report-notices and thereupon noted the hour of serving the notice, signed the notation and returned all four report-notices to the supervising principal; on September 15th an information was lodged with the justice of the peace alleging a violation of the compulsory attendance law, and on the

following day defendant was arrested and a hearing entered into after which defendant was found guilty and the sentence imposed.

It may be observed in passing that beginning Monday, September 11th, although the bus stopped at his door, defendant refused to allow his children to board the bus and an hour later defendant took all four of the children to their respective buildings, having them there at 8:50 standard time, which procedure he followed until September 26th when the schools began to operate at 9 a.m. (E. S. T.) after adoption of a proper resolution by the board of directors.

It is the contention of the Commonwealth that the four Schrock children having been properly assigned to the several grades of the public schools conducted for the district, defendant violated the applicable provisions of the Public School Code by admittedly preventing them from attending school and, in fact, detaining them from such attendance during the school days of September 6, 7 and 8, 1950.

It is provided in substance in the Public School Code of March 10, 1949, P. L. 30, sec. 1327, 24 PS §13-1327, that every child of compulsory school age having a legal residence in this Commonwealth is required to attend a day school in which the subjects and activities prescribed by the State Council of Education are taught in the English language and imposes upon the parent, guardian or person having control of such child the obligation of sending such child to a day school and provides further, "such child or children shall attend such school continuously through the entire term, during which the public elementary schools in their respective districts shall be in session . . ." Section 1326 (24 PS §13-1326) of the same code defines compulsory school age insofar as the same is applicable to this case as "the period of a child's life from the time the child's parents elect to have the child enter school, which shall

not be later than at the age of eight (8) years, until the age of seventeen (17) years."

Procedures and penalties for violation of the compulsory attendance requirements are set forth in section 1333 of the code (24 PS §13-1333) as follows:

"Every parent, guardian, or person in parental relation, having control or charge of any child or children of compulsory school age, who shall fail to comply with the provisions of this act regarding compulsory attendance, shall on summary conviction thereof, be sentenced to pay a fine, for the benefit of the school district in which such offending person resides, not exceeding two dollars ($2) for the first offense, and not exceeding five dollars ($5) for each succeeding offense, together with costs, and, in default of the payment of such fine and costs by the person so offending, shall be sentenced to the county jail for a period not exceeding five (5) days. Any person sentenced to pay any such fine may, at any time within five (5) days thereafter, appeal to the court of quarter sessions of the proper county, upon entering into a recognizance, with one or more proper sureties, in double the amount of penalty and costs. Before any proceedings are instituted against any parent, guardian, or person in parental relation, for failure to comply with the provisions of this act, the district superintendent, supervising principal, attendance officer, or secretary of the Board of School Directors, shall give the offending person three (3) days' written notice of such violation. If, after such notice has been given, the provisions of this act regarding compulsory attendance are again violated by the persons so notified, at any time during the term of compulsory attendance, such person, so again offending, shall be liable under the provisions of this section without further notice."

We have already noted the fact that this defendant intentionally detained and prevented these four chil-

dren from attending the public schools to which they were properly assigned and our inquiry now is the validity of his defense to the summary action taken against him. He asserts and advances three reasons why the judgment of the justice of the peace must be reversed, which reasons may be abridged as follows:

1. There was no violation of the attendance requirements of the code because a violation does not occur until after three days of unexcused absenteeism shall have occurred after notice is given to the parent.

2. The school authorities failed to give this defendant three days' notice of the unexcused absences of his four children before prosecution was instituted.

3. The school district operated its schools and conducted the sessions thereof on Eastern Daylight Saving Time and not Eastern Standard Time.

1. Defendant contends that the compulsory attendance provision of the code cannot be violated until and unless three days' unexcused absenteeism shall have occurred after notice given and in support of that contention relies on the three-day reference in section 1333. To quote from his written brief, "The law nowhere provides for nor permits a prosecution to be made *within* three days of the notice. On the contrary it specifically prohibits it". Applying his contention to the facts here it is that there was no violation of the code since notice of the absenteeism was not given until September 5th, defendant was within his rights in detaining the children from school on September 6th, 7th and 8th, and that if the children did not attend school on Monday, September 11th, then under this section of the code, a summary proceeding might conceivably be instituted. The contention is untenable. Section 1327 of the code, supra, is substantive, while section 1333 of the code, supra, is procedural. That notice of the violation of the substantive provision of the code must be given to the offending person and that this notice must be given three

days "before any proceedings are instituted" admits of no doubt and was so held in Smith v. Lackawanna County, 12 Lack. Jur. 235 (1921), and Commonwealth v. Nolt, 9 D. & C. 148. In the instant case notice was given on September 5th and more than three days elapsed before the institution of the summary proceedings, but during that time it will be recalled the children were prevented from attending school at all on September 6th, 7th and 8th and although as a matter of fact they attended school on September 11th and succeeding schools days, they arrived at the school buildings one hour tardy each day for the reason to be hereinafter noted.

As to the first contention, it is our view that this defendant violated the mandatory substantive provision of the code and that the procedural provision of three days' notice before institution of a summary proceeding was fully complied with. If the contention of defendant were upheld, it is not difficult to imagine as a logical consequence thereof the gross irregularity of attendance of children of a recalcitrant parent which might result thereby.

2. The second contention of this defendant is equally untenable. He contends that the school authorities failed to give to the parent the three days' notice as required. As a matter of fact, the several teachers used a mimeographed form addressed to the attendance officer indicating the absenteeism of these four children in which the teachers noted the dates thereof and signed and dated the form which they then delivered to the principal, who in turn delivered it to the attendance officer; that same day that the officer received the absentee report, he went to the Schrock home and read one form in full and informed defendant as to the contents of the other three forms; no copy of the form was left with defendant; the forms were then returned to the office with the notation "date and hour served, Septem-

ber 5th, 10:40 a.m. 1950", and the signature of the officer on each form. While we appreciate the labored argument of defendant's counsel that a written notice may not have been served upon defendant with the technical niceties desired and while we further appreciate that we are concerned with a penal statute which must, under the authority of a legion of cases, be strictly construed, we are not impressed with the technicalities nor the necessity of strict construction to the point of absurdity. We cannot and will not overlook the fact in this case that defendant intentionally and purposely kept his children from school, that he knew he was violating the apparent mandatory provisions of the Public School Code of 1949, that he knew he would be arrested therefor, and that he knew the purpose and mission of the enforcement officer.

The provision for giving written notice to the alleged offending party is to appraise him of the absence of his children from school, a fact which was well known to defendant; if we should now sustain this appeal and reverse the justice of the peace for the reason contended, we would make a mockery of the enforcement procedure of this code as applied to the instant case.

3. Notwithstanding the two previously mentioned contentions advanced by defendant, the particular reason for nonattendance of these children at school and the primary defense to this summary proceeding is defendant's contention that the schools of the joint district were operated on daylight saving time and not standard time.

In Somerset County a large number of rural inhabitants operate many excellent dairy farms and also engage in general farming. A portion of these citizens, for various good reasons, are opposed to the use of socalled fast or daylight saving time; there are likewise many urban dwellers in the county equally opposed to the "fast" time; there are many rural inhabitants, as

well as many urban inhabitants, who prefer "fast" time during the summer months; for several years the controversy has become one of considerable local debate and discussion and at least one direct attempt was made by court procedures to determine the legal status thereof. A group of citizens, not all from Somerset County, however, have formed an association named the Conference to Eliminate Daylight Saving, of which association defendant is a member. One of the purposes of the association is the elimination of the use of daylight saving time during certain months of the year and the continuous use of Eastern Standard Time throughout the year. Although counsel for the Commonwealth contended at the oral argument and in his written brief that the daylight saving time or standard time question is not involved in this case, we have concluded to examine the contention of defendant for the purpose of ascertaining whether or not it is a defense to the alleged statutory violation.

When the attendance officer called at defendant's home to notify him of the absence of his children from the school sessions, defendant told him "there is no school yet according to God's time, therefore I will not sign (i.e. the notice of unexcused absence) as my children has not missed three days". When on the morning of August 28th, defendant spoke to the school bus driver he indicated his opposition to the time prevalent and in use in the schools and community, and when testifying at the hearing in court he steadfastly maintained that his sole reason for keeping his children from school was "Just on account of the time, because we operate everything on standard time, don't recognize anything but that, we never changed". The pertinent inquiry therefore is, did the school district conduct its sessions of school on standard time or daylight saving time?

There is no controversy that all school districts in this Commonwealth are governed by the Act of April

13, 1887, P. L. 21, as amended, 76 PS §171, which provides, inter alia, as follows:

"That on and after the first day of July, Anno Domini one thousand eight hundred and eighty-seven, the mean solar time of the seventy-fifth meridian of longitude west of Greenwich, commonly called eastern standard time shall be the sole and uniform legal standard time throughout this Commonwealth; and on and after the date aforesaid all days shall everywhere be taken to begin and end in accordance with said standard; and every mention of, or reference to, any hour or time in any and all existing future acts of assembly, municipal ordinances, and corporate bylaws, in any and all existing or future rules or regulations adopted by any public officer or official board, . . . shall be construed with reference to, and in accordance with, the said standard hereby adopted, unless a different standard is therein expressly provided for . . . and provided, that no county, city, borough, town, township or other municipal subdivision of the Commonwealth shall, by ordinance, resolution, or rule, adopt a different standard of time for any year, or any portion of the year, than that herein provided; and all ordinances, resolutions, and rules heretofore adopted, contrary to this proviso, are declared to be void and of no effect."

Accordingly, the only legal time for this school district is Eastern Standard Time, and it is equally clear that the school district may not legally operate on so-called daylight saving time.

The several school boards meeting jointly constitute the governing authority of the joint Berlin-Brothersvalley School District: Public School Code of 1949, sec. 1704 (24 PS §17-1704).

There can be no controversy that to the school board of the Berlin-Brothersvalley School District is committed the authority and mandatory duty of fixing the calendar of school sessions; although the code designates

the hours of those school sessions, it gives authority to the board of directors to change or fix other hours of those school sessions, which under the Act of 1887 as amended, must be fixed according to standard time. The applicable section of the Public School Code is as follows:

"The board of school directors of each school district shall fix the date of the beginning of the school term. *Unless otherwise determined by the board,* the daily session of school shall open at nine ante-meridian and close at four post-meridian, with an intermission of one hour at noon, and an intermission of fifteen minutes in the forenoon and in the afternoon." Section 1504 (24 PS §15-1504).

Discretion is vested in the school board by this legislative provision as to the hours to be fixed in conducting the school sessions, and it was in the exercise of this discretion that this school board adopted the resolution on August 10, 1950, fixing the hours of beginning and concluding the school sessions. Did this board abuse its discretion in adopting this resolution? The resolution is clear and precise in its terms and its meaning is equally clear and precise; the purpose of the resolution is self-evident; the resolution recognizes standard time as provided in the Act of 1887 and is basically in accordance therewith and the parenthetical references to daylight saving time, as well as the reference to the termination of the schedule thereby fixed is for clarity of interpretation of the resolution. This court is not unmindful of the fact, nor do we ignore it, that by this resolution, the practical effect was to operate those schools consistent with daylight saving time; that effect did not casually happen; it was purposeful; the use of daylight saving time or "fast time" resulted not only in hardship to many farm operators but also brought about untold confusion to farm, as well as urban dwell-

ers; the underlying purpose of the resolution and the intention of the directors in adopting the resolution was to avoid some of that confusion resulting in the use of daylight saving time in the Borough of Berlin and Township of Brothersvalley and many of the neighboring communities where it was adopted and used. It was because of the confusion and inconvenience in all of the homes of the district which motivated the directors in exercising the discretion vested in them by the Public School Code. For this reason this court cannot say that the adoption of the resolution under review was an abuse of discretion, and it follows that this defendant was obliged to comply with the determination by the proper authority of the district in establishing the hours of the school session in this district.

In this opinion we have not been unmindful of the pronouncement by the late President Judge Shafer in Smith v. City of Pittsburgh et al., 30 Dist. R. 454, when reviewing the ordinance of the City of Pittsburgh attempting to establish daylight saving time, wherein he said:

"It needs no argument, and admits of no doubt, that neither the Council of the City of Pittsburgh nor of any borough in the county, nor the supervisors of any township, have any power whatever to repeal or modify this law (i.e. the Act of 1887, as amended) and, therefore, we conclude that the ordinance complained of has no legal effect whatever," and further

"There is nothing unlawful or in violation of the Act of Assembly fixing the standard time for any individual or institution or the public generally to move back their activities one hour and to set their clocks forward accordingly. Wherever, however, any specific hour of the day is fixed for the performance of any legal duty, it must, of course, be taken to be eastern standard time."

To the same effect is Loeb v. Romano, 14 D. & C. 53; annotation, 143 A. L. R. 1238.

While we appreciate defendant's view that the action of the board of directors in practical effect was to operate the schools of the district on daylight saving time and thus place a burden upon him and while we appreciate the view of those who oppose the use of daylight saving time, their remedy is with the legislature and not the courts.

Two prosecutions were instituted before the justice of the peace and fines of two dollars in each case were imposed, and in fact paid, but the appeal was allowed notwithstanding; at that time it was stipulated that both cases should be consolidated for purposes of the appeal and we so heard them de novo. On the authority of Commonwealth v. Henry, 20 D. & C. 594, with which opinion we are in accord, although affirming the judgment of the justice of the peace, we shall direct a remittance of one of the two fines imposed and paid.

At the hearing before this court, testimony was introduced over objection with reference to the nonattendance of Alice Schrock, aged 7; for the reason mentioned in Commonwealth v. Henry, supra, we need not pass upon the objection as it did not apply to the other children and no harm could have resulted to defendant by its admission.

Upon a careful consideration of these cases we have concluded to sustain the determination and sentence of the justice of the peace and dismiss the appeal, hence the following

### Order

Now, February 21, 1951, the judgment of the justice of the peace is sustained, but it is ordered and directed that the fine imposed and paid in the prosecution instituted by George S. Dively be remitted to defendant; the costs of this appeal to be paid by defendant.